IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| C&D COAL COMPANY, LLC, | ) | Bankruptcy No. 16-24726-GLT |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| KINGSTON COAL COMPANY, | ) | Document No._____ |
| | ) | |
| Movant, | ) | Hearing Date and Time: February 9, 2017 |
| | ) | at 10:00 a.m. |
| v. | ) | |
| | ) | Response Deadline: January 23, 2017 |
| C&D COAL COMPANY, LLC, | ) | |
| | ) | |
| Respondent. | ) | |

**MOTION OF KINGSTON COAL COMPANY FOR MANDATORY
ABSTENTION OR, IN THE ALTERNATIVE, PERMISSIVE ABSTENTION**

Movant, Kingston Coal Company ("Kingston Coal"), by its undersigned attorneys, files this Motion for Mandatory Abstention or, in the Alternative, Permissive Abstention (the "Motion"), pursuant to 28 U.S.C. §§ 1334(c)(1) and (c)(2), and in support states as follows:

**Introduction**

1. Prior to the commencement of this bankruptcy, Kingston Coal commenced an action in ejectment in the Court of Common Pleas of Westmoreland County, Pennsylvania, at Case No. 4809 of 2016 (the "Ejectment Action") to obtain physical possession of the Leased Premises (as defined in the Ejectment Action) related to the coal leases and surface rights previously assigned or subleased by Kingston Coal to the Debtor pursuant to two Assignment Agreements that were terminated prior to the commencement of this chapter 11 case. The Ejectment Action is based solely on State law, does not arise under title 11 of the United States Code or arise in a case under title 11, could not have been commenced in a court of the United

States absent jurisdiction under 28 U.S.C. §1334, and can be timely adjudicated. Accordingly, abstention is mandatory.

## Background

2. Kingston Coal is a Pennsylvania corporation with its principal place of business in Wexford, Pennsylvania.

3. C&D Coal Company, LLC ("C&D" or "Debtor") is a Pennsylvania limited liability company that filed a voluntary petition for relief under chapter 11 on December 22, 2016 (the "Petition Date").

4. Kingston Coal is the lessee of certain coal and surface property located in Derry Township, Westmoreland County, Pennsylvania, pursuant to numerous written lease agreements with the land owners (the "Derry Township Leases").

5. Kingston Coal is also the lessee of certain coal and surface property located in Fairfield Township, Westmoreland County, Pennsylvania, pursuant to numerous written lease agreements with the land owners (the "Fairfield Township Leases").

6. On April 11, 2008, Kingston Coal entered into an "Assignment Agreement" with C&D by which Kingston Coal assigned or subleased certain leasehold estates encompassed by the Derry Township Leases to C&D for C&D to conduct mining operations (the "Derry Township Leases Agreement").

7. The Derry Township Leases Agreement was amended six times to assign or sublease additional leasehold estates to C&D Coal. A copy of the Derry Township Leases Agreement, as amended, is attached as **Exhibit DD** (without the attached leases) to the Complaint filed in the Ejectment Action, a copy of which Complaint (the "Ejectment

2

Complaint") is attached hereto as **Exhibit 1** (without the underlying coal leases that were attached to the Complaint as Exhibits A through CC).

8. On October 1, 2011, Kingston Coal entered into an "Assignment Agreement" with C&D by which Kingston Coal assigned or subleased certain leasehold estates encompassed by the Fairfield Township Leases to C&D for C&D to conduct mining operations (the "Fairfield Township Leases Agreement" and together with the Derry Township Leases Agreement, the "Agreements").  A copy of the Fairfield Township Leases Agreement (without the attached leases) is attached as **Exhibit EE** to the Ejectment Complaint (Exhibit 1).

9. By letter dated May 15, 2016, Kingston Coal provided notice to C&D of C&D's multiple events of default under the Agreements, including C&D's failure to make the advance royalty payments to Kingston Coal required by Paragraph 7.B of both Agreements through May 15, 2016, C&D's failure to make the advance royalty payment to lessors required by Paragraph 16 of both Agreements through May 15, 2016, and C&D's failure to commence and diligently mine under both Agreements.  A copy of Kingston Coal's May 15, 2016 letter is attached as **Exhibit FF** to the Ejectment Complaint (Exhibit 1).

10. Kingston Coal had previously provided written notice to C&D of its payment defaults for January, February and March 2016, and when Kingston Coal sent its May 15, 2016 letter to C&D those defaults had not been cured within thirty (30) days of the prior notice, and were never cured.

11. The defaults identified in Kingston Coal's May 15, 2016 letter were not cured by May 18, 2016, they were not cured within 30 days thereafter, and were never cured.

12. By letter dated September 2, 2016 (the "Termination Letter"), Kingston Coal provided written notice to C&D that the Derry Township Leases Agreement and the Fairfield

3

Township Leases Agreement were terminated effective immediately for the reasons set forth in that letter. A copy of the Termination Letter is attached as **Exhibit GG** to the Ejectment Complaint (Exhibit 1).

13. Notwithstanding that Kingston Coal properly terminated the Agreements prior to the Petition Date, C&D was in physical possession of certain portions of the Leased Premises (as defined in the Ejectment Complaint) formerly covered by the Agreements (as identified in paragraph 35 of the Ejectment Complaint).

14. Accordingly, on September 29, 2016, Kingston Coal filed the Ejectment Complaint with the Court of Common Pleas of Westmoreland County. The pleadings in the Ejectment Action are closed, as C&D filed its Answer and New Matter on November 17, 2016, and Kingston Coal filed its Reply to New Matter on December 7, 2016.

15. Pursuant to Rule 1055 of the Pennsylvania Rules of Civil Procedure, Kingston Coal was entitled to include in the Ejectment Complaint a count to recover "rents, profits or other damages which arise from the defendant's possession of the land." Thus, in addition to seeking an order in ejectment and a declaration that the Agreements were properly terminated and that Kingston Coal is entitled to possession of the Leased Premises and all improvements thereon, the Ejectment Complaint contains a third count ("Count III") seeking monetary damages for the $270,000 in advance royalties that C&D failed to pay Kingston Coal under the Agreements prior to their termination and in excess of $45,000 owed as advanced royalties to the initial lessors to Kingston Coal that C&D was obligated to pay but which Kingston Coal was forced to pay to maintain the coal leases after C&D's defaults and termination of the Agreements. Notwithstanding the mandatory abstention of the Ejectment Action, Kingston Coal does not seek abstention with respect to Count III of the Ejectment Action (and all future references to the

Ejectment Complaint are deemed to refer only to Counts I and II), but Kingston Coal does not waive or release its right to seek in the future abstention or relief from the automatic stay, to the extent applicable, to pursue Count III in the Court of Common Pleas of Westmoreland County.

16. Notwithstanding the pendency of the Ejectment Action and three other lawsuits pending by Kingston Coal and its affiliate, Kingston Gas LLC ("Kingston Gas"), in both Westmoreland County and Allegheny County, and numerous liquidated and unliquidated claims asserted therein, including judgments in favor of Kingston Coal, the Debtor failed to include either Kingston Coal or Kingston Gas on its List of Creditors Who Have the 20 Largest Unsecured Claims and even failed to list them in its initial mailing matrix. (See Docket No. 1).

17. By February 2016, prior to the formal termination of the Agreements, the Debtor had ceased operations on the Leased Premises formerly covered by the Agreements. Even after a substantial uptick in the coal market prior to the termination of the Agreements, the Debtor did not resume operations at the one mine where operations had commenced. (The Debtor was contractually obligated to diligently operate four mines, but the only mine it ever operated, albeit not diligently, was the deep mine known as the Kingston West Mine in Derry Township). Upon information and belief, C&D has now laid off all of its employees and maintains only a single full-time employee and one part-time employee at the site. Prior to the Petition Date, C&D failed to pay its electric bill associated with powering the necessary operations at the Kingston West Mine, and the electric bill had to be paid by a third party in order to power the fans and pumps necessary to prevent flooding of the Kingston West deep mine or other environmental hazards or damage to Kingston Coal's property or the environment. Indeed, it is believed some flooding or other damage may have already occurred.

18. The Ejectment Action remains pending and the ejectment related relief can be timely adjudicated.

**Relief Requested**

**A.    28 U.S.C. §1334(c)(2) Mandates This Court's Abstention From the Ejectment Action.**

19. When the elements of mandatory abstention are satisfied, section 1334(c)(2) of Title 28 of the U.S. Code requires that a court abstain from hearing a proceeding. Upon timely motion, a Court must abstain if the following five elements of mandatory abstention are met: (1) the proceeding is based on a state law claim or cause of action; (2) the proceeding is "related-to," a case under title 11, but does not "arise under" or "arise in" a case under title 11; (3) there is no basis for federal jurisdiction other than under 28 U.S.C. §1334; (4) an action is commenced in a state forum of appropriate jurisdiction; and (5) the action in state court can be timely adjudicated. *Stoe v. Flaherty*, 436 F.3d 209, 213 (3d Cir. 2006); *Schempp Real Estate, LLC*, 303 B.R. 866, 871 (D. Colo. 2003); *Reunion Indus., Inc. v. Steel Partners II, L.P.*, 410 B.R. 170, 173 (W.D. Pa. 2008).

20. With respect to the first element, the Ejectment Action is based upon state law claims. Each claim or cause of action in the Ejectment Complaint solely arises out of, and is based upon, Pennsylvania state law. (*See* Ejectment Complaint at ¶1 ("This action arises under the laws of the Commonwealth of Pennsylvania . . . .")). Therefore, the first element for mandatory abstention is met.

21. The Ejectment Action is a non-core, "related to" proceeding. The courts have interpreted core proceedings to include those proceedings which have no existence outside of the bankruptcy; whereas non-core proceedings do not depend on bankruptcy law and can proceed in another court entirely. *See Stoe*, 436 F.3d at 216–217; *In re Miramar Resources*, 176 B.R. 45, 48

(D. Colo. 1994) (citing *In re Gardner*, 913 F.2d 1515 (10th Cir. 1990)). Here, the right to eject a former tenant from real property located in Pennsylvania is a quintessential state law cause of action. The Ejectment Complaint does not include any bankruptcy claims or causes of action. The Ejectment Action was commenced prior to C&D filing its Chapter 11 petition; the Ejectment Action is merely "related to" this bankruptcy case and involves no issue of bankruptcy law. Accordingly, the second element for mandatory abstention is met.

22. The third element of mandatory abstention is met when an action could not have been commenced in federal court absent the initiation of a bankruptcy case under title 11 and there is no basis for federal jurisdiction other than under 28 U.S.C. § 1334. *In re Schempp Real Estate*, 303 B.R. at 873. The Ejectment Action involves no federal question and could not have been commenced in federal court as there is no diversity of citizenship (both parties are Pennsylvania entities). Thus, the only conceivable basis for federal jurisdiction over the Ejectment Action is 28 U.S.C. § 1334; therefore, the third element of mandatory abstention is satisfied.

23. The Ejectment Action is pending and can be timely adjudicated in the Westmoreland Court of Common Pleas. The pleadings are closed and the Common Pleas Court is poised to promptly hear the equitable claim for ejectment. A deposition of a representative of C&D was noticed to occur on December 28, 2016 (which may explain in part why the bankruptcy petition was filed). As soon as that deposition occurred, a motion to hear the ejectment relief would have been filed and, upon information and belief, promptly heard by the Court. Thus, not only does the Ejectment Action predate this bankruptcy case, but the state law claims asserted in the Ejectment Action can be adjudicated most efficiently in State Court. Therefore, the fourth and fifth elements of mandatory abstention are satisfied.

24. Because all of the elements of 28 U.S.C. § 1334(c)(2) are satisfied, this Court should determine that mandatory abstention applies to the Ejectment Action, and the Bankruptcy Court, therefore, must abstain from hearing the state law claims asserted in the Ejectment Action and should modify the stay to the extent applicable (see Part B below) to allow the Ejectment Complaint to proceed to final judgment.

**B.  The Court Should Exercise Its Discretion To Abstain From Hearing the Ejectment Action.**

25. Alternatively, this Honorable Court should abstain from hearing the Ejectment Action pursuant to the permissive abstention doctrine under 28 U.S.C. § 1334(c)(1).

26. The Bankruptcy Court may choose to abstain from any proceeding if it concludes the matters are best left to the state court to decide. *In re Telluride Income Growth*, 364 B.R. 390, 398 (10th Cir. BAP (Col.) 2007). Bankruptcy Courts have "broad power to abstain whenever appropriate in the interest of justice, in the interest of comity with state courts, or with respect for state law." *Bricker v. Martin*, 348 B.R. 28, 33 (W.D. Pa. 2006) (citing *Wood v. Wood*, 825 F.2d 90, 93 (5th Cir. 1987)); *In re Schempp Real Estate*, 303 B.R. at 876.

27. Courts will weigh a multitude of factors in determining whether discretionary abstention is appropriate. *See Bricker v. Martin*, 348 B.R. at 34. These factors include:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the Bankruptcy Court's] docket, (10) the likelihood that the commencement of the proceeding in Bankruptcy Court

8

>  involves forum shopping by one of the parties, (11) the existence of the right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

Id. (citations omitted). In the instant case, these twelve factors weigh heavily in favor of permissive abstention. In addition, because the Ejectment Complaint is an action by a lessor (or former sub-lessor) under an assignment or sub-lease of nonresidential real property that was terminated prior to the commencement of this case, the Ejectment Action is not subject to the automatic stay. 11 U.S.C. §362(b)(10). *See In re West Pine Construction Company*, 80 B.R. 315 (E.D. PA. 1987) (§362(b)(10) applies, and therefore the automatic stay does not apply, to a coal lease whose "stated term" was terminated by virtue of defaults prior to the commencement of the bankruptcy case). Nevertheless, even if the stay did apply, permissive abstention is warranted.

28. The first factor under 28 U.S.C. §1334(c)(1) favors abstention because the Ejectment Action can and should be resolved by a simple motion and a single hearing. The Ejectment Action can be timely and efficiently litigated in State Court. Moreover, the Westmoreland County Court of Common Pleas is the best forum to address the issues of state property and contract law in the Ejectment Action. Conversely, there are no bankruptcy law issues in the Ejectment Action, and the administration of the bankruptcy estate is just beginning.

29. As stated, the Ejectment Action only involves state law issues, thereby satisfying the second factor.

30. There are no difficult or unsettled questions in the Ejectment Action since it involves a simple termination of contracts in accordance with their terms and a holdover tenant. The Ejectment Action, therefore, can be quickly resolved, notwithstanding C&D's mere denial of the proper termination of the Agreements. These facts satisfy the third factor in favor of abstention.

31. The fourth factor to consider for permissive abstention clearly is satisfied. The Ejectment Action is a related proceeding that was commenced in State Court prior to the commencement of this bankruptcy case.

32. There is no federal jurisdiction over the Ejectment Action outside of Section 1334. Were it not for Section 1334, the Ejectment Action could not be heard in the Bankruptcy Court or any federal court. Accordingly, the fifth factor is met.

33. The claims asserted in the Ejectment Action arose pre-petition, arose solely under Pennsylvania law, and are, at best, only related to the bankruptcy. Therefore, the sixth factor weighs in favor of abstention.

34. Although the Debtor may attempt to argue that the Ejectment Action involves property of the estate issues that are "core" to the bankruptcy, that argument would elevate form over substance. The underlying claims in the Ejectment Action are all quintessential state law claims. "Absent federal preemption, we look to state law to determine the nature of a debtor's interest in property." *In re Net Pay Sols., Inc.*, 822 F.3d 144, 158 n.13 (3d Cir. 2016) (citing *Butner v. United States*, 440 U.S. 48, 54-55 (1979)); *see also Integrated Sols., Inc. v. Serv. Support Specialties, Inc.*, 124 F.3d 487, 492 (3d Cir. 1997) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law.") (quoting *Butner v. United States*, 440 U.S. 48, 54 (1979)); *see also* 11 U.S.C. §541(b)(2). Thus, the substance of the Ejectment Action is non-core and this seventh factor weighs in favor of abstention.

35. As stated above, Kingston Coal acknowledges that its claim for damages included in Count III of the Ejectment Complaint can be severed from the Ejectment Action. Those monetary claims can be addressed through the bankruptcy claims process (although an objection

to Kingston Coal's proofs of claim could raise abstention and other issues at that point). Thus, if and to the extent the monetary claims are core bankruptcy matters, the ease and feasibility of severing them from the Ejectment Action weighs in favor of abstention.

36. The ninth factor is neutral or also weighs in favor of abstention. Allowing the State Court to adjudicate the Ejectment Action would relieve a burden upon the Bankruptcy Court's docket, although there is no doubt the Bankruptcy Court is competent and able to hear the Ejectment Action. The test under 28 U.S.C. §1334(c)(1), however, is not whether the Bankruptcy Court could timely hear the proceeding (if it had jurisdiction); rather, the test is only whether the State Court can timely adjudicate the proceeding. *See In re Milford Grp., Inc.*, 164 B.R. 892, 898 (M.D. Pa. 1993) (granting motion for abstention under 28 U.S.C. § 1334(c)(1) and stating that "[w]hile there has been little provided by either side concerning the timely adjudication of the pending state court action, this Court has determined that adjudication in the state court will not impede the administration of this case and therefore, timeliness is not an issue compelling this Court to retain jurisdiction."). Moreover, the early filing of this Motion eliminates any duplicative efforts on the part of the two courts and eliminates any additional burden on the Bankruptcy Court docket. *See In re Naugatuck Dairy Ice Cream Co., Inc.*, 106 B.R. 24, 29 (D. Conn. 1989) (granting permissive abstention and reasoning that a "state court action is pending and appears to be proceeding to trial, thus, abstention would prevent two parallel proceedings"). It also avoids the awkward possibility of conflicting decisions by different courts on the same issues of state law. Since the issues in the Ejectment Action are peculiarly matters of state property and contract law, notions of comity and respect for state law support permissive abstention under 28 U.S.C. §1334(c)(1).

37. It is clear beyond peradventure that the bankruptcy case was commenced primarily to avoid the State Court from hearing the Ejectment Action, as well as the other litigation pending in Westmoreland and Allegheny County. The tenth factor that discourages forum shopping, therefore, strongly supports abstention. By abstaining from hearing the Ejectment Action, the Bankruptcy Court would preclude the Debtor from benefiting from its attempt to forum shop.

38. The eleventh and twelfth factors are not relevant in this instance, as there is no demand for or right to a jury trial in the Ejectment Action and there are no non-debtor parties (other than Kingston Coal) in the Ejectment Action.

39. Based upon the factors weighing overwhelmingly in favor of permissive abstention, Kingston Coal respectfully requests that this Court abstain from hearing the Ejectment Action and allow final adjudication of Counts I and II in the Ejectment Complaint in the Court of Common Pleas of Westmoreland County.

[Remainder of page intentionally left blank]

WHEREFORE, for all of the foregoing reasons, Kingston Coal Company respectfully requests that this Honorable Court (1) find that mandatory abstention or, in the alternative, permissive abstention, applies to the Ejectment Action and allow that action to be adjudicated to final judgment in the Court of Common Pleas of Westmoreland County, Pennsylvania, (2) grant this Motion by entering an order in substantially the form of proposed order attached to this Motion, and (3) grant any additional relief this Court deems just and proper including modification of the automatic stay, to the extent applicable, for final adjudication of the Ejectment Action.

Respectfully submitted,

COHEN & GRIGSBY, P.C.

Dated: January 5, 2017

By: */s/ William E. Kelleher, Jr.*
William E. Kelleher, Jr.
Pa ID No. 30747
Thomas D. Maxson
Pa ID No. 63207
Helen Sara Ward
Pa ID No. 204088
625 Liberty Avenue
Pittsburgh, PA 15222-3152
(412) 297-4703
(412) 209-1997 (Fax)
wkelleher@cohenlaw.com
tmaxson@cohenlaw.com
hward@cohenlaw.com

*Counsel for Movant, Kingston Coal Company*

2397544.v1